UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| MARK ANTHONY SULAKA, | Civil Action No.: 16-13800 |
| | Honorable Thomas L. Ludington |
| | Magistrate Judge Elizabeth A. Stafford |
| Plaintiff, | |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

_____/

**REPORT AND RECOMMENDATION ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT [ECF. NOS. 15, 20]**

Plaintiff Mark Anthony Sulaka appeals a final decision of defendant Commissioner of Social Security (Commissioner) denying his application for disability insurance benefits (DIB) under the Social Security Act. Both parties have filed summary judgment motions, referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). After review of the record, the Court finds that the administrative law judge's (ALJ) decision is supported by substantial evidence, and thus **RECOMMENDS** that:

- the Commissioner's motion [ECF No. 20] be **GRANTED**;
- Sulaka's motion [ECF No. 15] be **DENIED**; and

- the Commissioner's decision be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

I. BACKGROUND

A. Sulaka's Background and Disability Application

Born July 9, 1964, Sulaka was 47 years old at the time of his alleged onset date of January 1, 2012. [ECF No. 11-2, Tr. 26]. He submitted his application for disability benefits in May 2013 and was insured for DIB purposes through December 31, 2017. [ECF No. 11-2, Tr. 20; ECF No. 11-5, Tr. 129]. Sulaka completed his high school education and his prior work experience has included being a liquor store owner, a builder, and a home inspector. [ECF No. 11-2, Tr. 25, 26]. He claimed to be disabled by pain in both of his knees, lower back, hip, and thigh pain, as well as shortness of breath and sleep apnea. [ECF No. 11-2, Tr. 38-39].

After the Commissioner denied his disability application initially, Sulaka requested a hearing, which took place in February 2015, during which he and a vocational expert (VE) testified. [ECF No. 11-2, Tr. 32-56]. In a March 13, 2015, written decision, the ALJ found Sulaka to be not disabled. [ECF No. 11-2, Tr. 15-31]. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner, and Sulaka timely filed for judicial review. [ECF No. 11-2, Tr. 1-6; ECF No. 1].

### B.  The ALJ's Application of the Disability Framework Analysis

DIB is available for those who have a "disability."  See *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps.  First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled.  20 C.F.R. § 404.1520(a)(4).  Second, if the claimant has not had a severe impairment or a combination of such impairments for a continuous period of at least 12 months, no disability will be found.[1]  *Id*.  Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled.  *Id*.  If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity (RFC), and will find the claimant not disabled if he or she can still do past relevant work.  *Id*.  At the final step, the Commissioner reviews the claimant's RFC, age,

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  § 1520(c).

education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Sulaka was not disabled. At the first step, he found that Sulaka had not engaged in substantial gainful activity since his alleged onset date. [ECF No. 11-2, Tr. 20]. At the second step, the ALJ found that Sulaka had the severe impairments of "osteoarthritis of both knees, ischemia, and obesity." *Id*. Next, the ALJ concluded that none of his impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. [*Id.*, Tr. 22].

Between the third and fourth steps, the ALJ found that Sulaka had the RFC to perform light work[2] with further limitations:

> [T]he claimant can lift and/or carry 20 pounds occasionally, and 10 pounds frequently, can sit up to six hours of an eight-hour workday, and can stand and/or walk up to six hours of an eight-

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

4

>hour workday. The claimant needs a sit/stand option that allows alternation between sitting and standing every 30 minutes. The claimant can occasionally climb ramps and stairs, but must avoid climbing ladders, ropes, and scaffolds. The claimant can occasionally stoop, kneel, crouch, and crawl. The claimant must avoid walking on uneven surfaces, and must avoid all exposure to unprotected heights. The claimant must avoid commercial driving, and must never use foot controls. The claimant requires a cane to ambulate.

[*Id.*, Tr. 22]. At step four, the ALJ found that Sulaka was unable to perform any past relevant work. [*Id.*, Tr. 25]. With the assistance of VE testimony, he determined at step five that Sulaka could perform occupations such as information clerk, office helper, parking lot attendant, and that those jobs existed in significant numbers in the economy, rendering a finding that he was not disabled. [*Id.*, Tr. 26].

## II.     ANALYSIS

### A.

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241

(6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Sulaka argues that the ALJ erred by failing to properly explain why he did not consider his sleep apnea and plantar fasciitis to be "severe" impairments; by failing to adequately discuss his back and hip pain; and by improperly discounting the opinion of Mutahhar Ahmad, M.D., that Sulaka was unable to work. The Court disagrees and recommends that the ALJ's decision be affirmed.

**B.**

In addition to the impairments deemed "severe," the ALJ noted that Sulaka had been diagnosed with sleep apnea, hypertension, and plantar fasciitis.[3] [ECF No. 11-2, Tr. 20]. The ALJ opined that these impairments were non-severe "[d]ue to the fact that they cause no more than minimal limitations in [Sulaka's] ability to perform basic work-related activities." [*Id.*] He noted that he considered the combined effects of all severe and

---

[3] Plaintiff does not challenge the ALJ's conclusion that his hypertension was not "severe," so the court has not included a discussion of that impairment in its analysis.

nonsevere impairments in assessing the RFC, as he was required to do. [*Id.*, Tr. 19; *citing* 20 CFR §§ 404.1520(e), 404.1545; SSR 96-8p].

Sulaka has the burden of demonstrating that his sleep apnea or plantar fasciitis are severe and prevented him from performing work as designated by the RFC. *Preslar,* 14 F.3d at 1110 (claimant bears the burden during the first four steps of the sequential evaluation); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) (claimant bears the burden of demonstrating the need for a more restrictive RFC). And it is well established in this Circuit that failure to find an impairment severe at step two of the sequential analysis is not reversible error if the ALJ found another impairment severe and considered all medically determinable impairments, including those deemed non-severe, within the five-step evaluation. *See, e.g., Anthony v. Astrue*, 266 Fed. App'x 451, 457 (6th Cir. 2008) (If the ALJ considered all impairments in the remaining steps, the fact that some of them were not deemed not severe at step two is "legally irrelevant.")

Sulaka does not meet his burden of demonstrating that his sleep apnea and plantar fasciitis constitute severe impairments; his mere diagnoses with these ailments is not enough. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis [of a disease] says nothing

7

about the severity of the condition."). To be considered "severe," his impairments must significantly limit his physical or mental ability to do basic work activities. § 1520(c). Sulaka points to no medical opinions in the record or other evidence suggesting that his sleep apnea or plantar fasciitis limited him or imposed any work-related limitations greater than those found by the ALJ.

With respect to the sleep apnea, Dr. Ahmad noted in August 2014 that Sulaka was "feeling tired and fatigued," but no specific body part was weak, and "power in all extremities [was] normal." [ECF No. 11-7, Tr. 274]. In August and September 2014, Bart Sangal, M.D., evaluated Sulaka at the Sleep Attention Disorders Institute, and diagnosed him with severe obstructive sleep apnea. [ECF No. 11-7, Tr. 282-86]. Dr. Sangal advised Sulaka that he should not drive while sleepy, [*Id.*, Tr. 282, 284], but he did not assess any other work limitations. Consistent with Dr. Sangal's recommendation, the ALJ's assessed RFC precludes Sulaka from commercial driving. [ECF No. 11-2, Tr. 22].

Sulaka argues that the ALJ did not consider his sleep apnea later in the sequential evaluation, but in fact the ALJ wrote, "In August 2014, when the claimant returned to Dr. Ahmad, the claimant reported that he was feeling tired and fatigued[.]" [ECF No. 11-2, Tr. 24]. The ALJ also

8

discussed Sulaka's testimony that he was unable to work due to his sleep apnea. [ECF No. 11-2, Tr. 23, 39]. Thus, the ALJ did consider Sulaka's allegations pertaining to his sleep apnea after concluding it was nonsevere, but found Sulaka's allegations regarding the severity of his impairments to be less than fully credible. [*Id.*, Tr. 25].

Sulaka's argument regarding his plantar fasciitis fares no better. In August 2014, Dr. Ahmad noted that Sulaka presented with medial heel tenderness due to plantar fasciitis. [ECF No. 11-7, Tr. 274]. This is the only mention of plantar fasciitis in the record, and Dr. Ahmad did not indicate that Sulaka was limited in any way beyond the recommendations in the RFC based on his diagnosis. Due to the lack of evidence showing that Sulaka had a limited ability to work or that the condition persisted (or was expected to persist) for the requisite 12-month period, the ALJ did not err in concluding that the condition was nonsevere. SSR 82-52, 1982 WL 31376, *1 (1982) (severe impairment must last or be expected to last for at least 12 continuous months); 20 C.F.R. pt. 404, subpt. P., app. 1, § 1.00D ("Because abnormal physical findings may be intermittent, their presence over a period of time must be established by a record of ongoing management and evaluation."); *Weck v. Berryhill*, No. CV 16-11027, 2017

WL 3033346, at *3 (E.D. Mich. June 16, 2017), *report and recommendation adopted,* No. 16-11027, 2017 WL 3023362 (E.D. Mich. July 17, 2017).

## C.

Sulaka also complains that the ALJ erred by not considering his back or hip pain. During his testimony, Sulaka identified his low back and hip pain among the reasons he could no longer work. [ECF No. 11-2, Tr. 38-39]. The ALJ had no obligation to find Sulaka's alleged back or hip pain to be severe (or nonsevere) impairments because, as noted by the Commissioner, symptoms are not medically determinable impairments. Indeed, as noted above, an impairment or combination of impairments is considered "severe" if it significantly limits an individual's physical or mental abilities to do basic work activities. § 1520(c); SSR 96-3p, 1996 WL 374181, *1 (July 2, 1996). "Symptoms, such as pain . . . will not be found to affect an individual's ability to do basic work activities unless the individual first establishes by objective medical evidence . . . that he or she has a medically determinable physical or mental impairment(s) and that the impairment(s) could reasonably be expected to produce the alleged symptom(s)." 1996 WL 374181 at *2.

As such, Sulaka was required to first produce objective medical evidence that he had a medically determinable impairment—only then

could the ALJ decide whether that impairment was severe. 20 C.F.R. § 404.1521. Objective medical evidence is evidence showing that a claimant has an impairment that results from "anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques," including "evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption." *Id.*; 20 C.F.R. § 1529(c)(2). Sulaka cites no such evidence, except for Dr. Ahmad noting muscle spasms in May 2014. [ECF No. 11-7, Tr. 255]. Sulaka otherwise relies on his symptoms and diagnoses, [ECF No. 15 PageID 355-56], which are insufficient for establishing the existence of an impairment. § 1521. His claim of error is without merit.

### D.

Sulaka's last claim of error is that the ALJ failed to properly account for treating physician Dr. Ahmad's opinion that he is unable to work. The "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinions regarding the nature and severity of a claimant's condition when those opinions are well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence. *Gentry*, 741 F.3d at 727-29; *Rogers,* 486 F.3d at 242-43. A medical opinion must reflect "judgments about the nature and

11

severity of [the claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and [his] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1).

In a September 2014 statement, Dr. Ahmad opined that Sulaka "suffers with multiple medical diagnosis such as, Abnormality of Gait, [Osteoarthritis] of Knees, Chronic Pain Syndrome, Back Pain, Knee Pain, and Obesity.  Based on his physical condition and health conditions it is in my medical opinion that he is unable to work at the time." [ECF No. 11-7, Tr. 272].  Because this opinion did not reflect an assessment of what Sulaka can do despite his impairments or any specific restrictions, it does not constitute a medical opinion as defined by Section 1527(a)(1).  In addition, the determination of whether Sulaka is capable of working is an issue reserved solely for the Commissioner, and the ALJ was not required to give Dr. Ahmad's opinion that Sulaka could not work any particular weight. *Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 2013 WL 5613535, at *7 (6th Cir. Oct.15, 2013).  Nonetheless, the ALJ did consider Dr. Ahmad's opinion, and gave it little weight because it was not supported by the doctor's examination findings.  [ECF No. 11-2, Tr. 25].  The ALJ noted that an MRI of Sulaka's right knee revealed thinning cartilage, and a tearing of the medial meniscus, with overlying MCL edema and outward

bowing, but pointed out that the medical records did not indicate that Sulaka was scheduled for any invasive procedures. [ECF No. 11-2, Tr. 25].

The ALJ also did not find Sulaka fully credible, first noting that the record revealed only minimal medical treatment of Sulaka's alleged impairments, and a two-year gap in treatment in visits to primary treating physician Dr. Ahmad, between 2012 and 2014. [*Id.*, Tr. 25, citing ECF No. 11-7, Tr. 249-266]. The ALJ further relied upon the fact that Sulaka's treatment was predominately conservative in nature, including knee injections and recommendations to adopt a healthier lifestyle. [*Id.*, Tr. 252, 254, 255, 257]. The conservative nature of treatment is a relevant factor when assessing a claimant's allegation of severe pain. *See McKenzie v. Comm'r Soc. Sec.*, No. 99-3400, 2000 WL 687680, *4 (6th Cir. 2000) (finding that plaintiff's complaints of disabling pain were "undermined by his non aggressive treatment").

Despite finding Sulaka less than credible, the ALJ took into consideration his ischemia, morbid obesity, and the need for a cane to ambulate in formulating the RFC for a limited range of light work. [ECF No. 11-2, Tr. 22]. The ALJ assessed Sulaka as being limited in his ability to sit, walk, stand, climb, stoop, kneel, crouch, crawl, walk and drive; as requiring

a sit-stand option; and as requiring a cane to ambulate. [ECF No. 11-2, Tr. 22]. Sulaka bears the burden of demonstrating that he requires a more restrictive RFC, *Jordan,* 548 F.3d at 423, and he does not meet that burden. The ALJ's decision should therefore be affirmed.

### III.  CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that the Commissioner's motion [ECF No. 20] be **GRANTED**; that Sulaka's motion [ECF No. 15] be **DENIED**; and the ALJ's decision be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

Dated: September 29, 2017

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

### **NOTICE TO THE PARTIES REGARDING OBJECTIONS**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party

might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection must be served upon this Magistrate Judge.  E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 29, 2017.

                                                    s/Karri Sandusky for
                                                  MARLENA WILLIAMS
                                                  Case Manager